UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NEERAJ SHARMA, et al.,

Plaintiffs,

v.

VOLKSWAGEN AG, et al.,

Defendants.

Case No. 20-cv-02394-JST

**ORDER GRANTING MOTIONS TO DISMISS**

Re: ECF Nos. 54, 59

Before the Court are Defendant Volkswagen Group of America, Inc.'s and Defendant Robert Bosch LLC's motions to dismiss. ECF Nos. 54, 59. The Court will grant the motions.

I.      **BACKGROUND**

   A.      **Procedural History**

Plaintiffs Neeraj Sharma and Stephan Moonesar filed this putative class action on April 8, 2020 against Defendants Volkswagen AG, Volkswagen Group of America, Inc., Audi AG, Audi of America LLC, Robert Bosch GmbH, and Robert Bosch LLC, based on an alleged defect in certain Volkswagen and Audi vehicles that causes the automatic emergency braking system ("AEB system") to falsely[1] engage randomly and unexpectedly. ECF No. 1 ¶ 4. In response to Defendants' prior motions to dismiss, ECF Nos. 34, 42, Plaintiffs filed an amended complaint on July 31, 2020, ECF No. 47.

This operative first amended complaint ("FAC") asserts four claims. *Id.* ¶¶ 118-167. Plaintiff Sharma alleges (1) violation of the California Unfair Competition Law ("UCL"), Cal.

---

[1] By "falsely," the complaint appears to mean inappropriately or erroneously. *See* ECF No. 1 ¶ 4 ("The AEB Defect causes the Class Vehicles to detect non-existent obstacles, thereby automatically triggering the brakes and causing the Class Vehicles to abruptly slow down or come to a complete stop, sometimes in the middle of traffic.").

United States District Court
Northern District of California

Bus. & Prof. Code §§ 17200 et seq., against both Defendants; and (2) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., against Volkswagen Defendants.  Plaintiff Moonesar alleges (3) violation of the New Jersey Consumer Fraud Act ("NJCFA") against Volkswagen Defendants.  Additionally, both Plaintiffs bring (4) a claim of unjust enrichment against both Defendants.  In addition to certain class certifications and declaratory judgments, the FAC seeks "[a]n order . . . enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices"; "[i]njunctive and equitable relief in the form of a comprehensive program to repair the AEB Defect, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Subclass members for all costs and economic losses"; and "[a]n order awarding . . . restitution, disgorgement, punitive damages, treble damages, exemplary damages and statutory damages[,] and compensatory damages for economic loss and out-of-pocket costs."  *Id.* at 65.

Defendant Volkswagen Group of America, Inc. ("Volkswagen") moves to dismiss on the grounds that Plaintiffs lack Article III standing, that Plaintiffs fail to satisfy the pleading requirements of Rule 9(b), and that Plaintiffs fail to state a claim upon which relief can be granted. ECF No. 54.  Defendant Robert Bosch LLC ("Bosch") moves to dismiss on the grounds that Plaintiffs lack Article III standing, that Bosch is not subject to personal jurisdiction in California, and that Plaintiffs fail to state a claim upon which relief can be granted.  ECF No. 59.

### B.    Factual Background

Sharma and Moonesar seek to represent a class of individuals who purchased or leased a Volkswagen or Audi vehicle equipped with an AEB System that utilizes either a Bosch mid-range radar sensor ("MRR") or a long-range radar sensor ("LRR") (collectively, "Class Vehicles"). FAC ¶¶ 3, 109.  Plaintiffs allege that "every Class Vehicle . . . uses the same, or substantially similar, Bosch-supplied AEB Systems, all of which manifest the same AEB Defect."  *Id.* ¶ 50. That defect, the FAC alleges, "causes the Class Vehicles to detect non-existent obstacles, thereby automatically triggering the brakes and causing the Class Vehicles to abruptly slow down or come to a complete stop, sometimes in the middle of traffic."  *Id.* ¶ 4.

According to the FAC, Bosch has known about the alleged defect since at least 2011 based

2

on pre-production testing, as well as pre-production and production design failure mode and data analysis. *Id.* ¶ 45. Bosch also knew about the alleged defect at the time that it lobbied the National Highway Traffic Safety Administration's ("NHTSA"), as demonstrated by the Administration's representation that "Bosch said there is no single test that will fully address the problem of false activations." *Id.* ¶ 47. Likewise, Volkswagen has known about the alleged defect since at least 2014 based on similar testing and data analysis, as well as early customer complaints, aggregate warranty data, and repair order and parts data transmitted by Volkswagen dealers. *Id.* ¶ 54. The FAC alleges that Volkswagen has "acknowledged" the existence of the alleged defect by "disclos[ing] the risk of false activations" of the AEB system "in small print buried in the middle of manuals that were hundreds of pages long." *Id.* ¶¶ 57, 59. Volkswagen also demonstrated its "long-standing knowledge of the AEB Defect and inability to fix it" in a "Technical Tip" publication which addressed customer concerns that "their vehicle performed an unwarranted autonomous braking event." *Id.* ¶ 65. Finally, the FAC alleges that Volkswagen was also put on notice of the alleged defect by complaints presented by Volkswagen vehicle owners on "enthusiast websites like AudiWorld.com, AudiForums.com, and Audi-Sport.net," *id.* ¶ 70, and by an "unusually high number of complaints to NHTSA about the AEB Defect," *id.* ¶ 74.

In Audi vehicles the AEB System is marketed as Audi "pre sense," *id.* ¶ 58, and in Volkswagen vehicles it is called "Forward Collision Warning & Autonomous Emergency Braking (Front Assist)," *id.* ¶ 95. Plaintiffs allege that Volkswagen "made and continue[s] to make partial representations about the AEB Systems on Monroney window stickers, which are affixed to the window of every [Volkswagen] and Audi Class Vehicle at the time of sale, and which uniformly tout AEB Systems as a 'safety/convenience' feature without disclosing the AEB Defect" or "otherwise direct[ing] Class members to the relevant portions of the owner's manual." *Id.* ¶¶ 93-94. In addition, Volkswagen advertised the AEB Systems in Audi and Volkswagen vehicles on online platforms which "d[id] not disclose . . . that the system is prone to false activations that can cause the car to suddenly stop or slow down for no good reason." *Id.* ¶¶ 96-97.

The FAC alleges that Bosch lobbied government entities to require AEB technology in new vehicles, and in so doing "either failed to disclose or downplayed the AEB Defect" and "did

1  not disclose that they had not yet found a satisfactory solution to address the radar sensors'

2  limitations." *Id.* ¶ 34.  Lobbying efforts included responding to the NHTSA) request for suggested

3  improvements to its rating system, and recommending that inclusion of crash avoidance systems

4  as a metric and requirement for Monroney Labels.  *Id.* ¶ 36.

5       Sharma alleges that he leased two vehicles – a 2017 Audi Q7 and an Audi A7 – which

6  were equipped with the AEB System.  *Id.* ¶ 26.  Moonesar alleges that he bought a certified pre-

7  owned 2018 Audi S4, also equipped with the AEB System.  *Id.* ¶ 27.  Both Plaintiffs claim that

8  they chose these vehicles after reviewing the Monroney window stickers, which advertised the

9  Audi pre sense technology but did not describe defects with the AEB System.  *Id.*  ¶¶ 26-27.  Both

10  further allege that they have "experienced the AEB Defect . . . in the form of unintentional,

11  phantom braking for no reason, and also instances of error messages appearing on [their]

12  dashboard[s] indicating the AEB system [was] not functional."  *Id.*  Sharma and Moonesar each

13  state that they would not have leased or bought the vehicles, or would not have done so on the

14  same terms, had they been made aware of this alleged defect.  *Id.*

15  **II.      SUBJECT MATTER JURISDICTION**

16       This Court has subject matter jurisdiction over this putative class action pursuant to 28

17  U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million and at least one

18  member in the proposed class of over 100 members is a citizen of a different state from at least

19  one Defendant.[2]  Although Defendants challenge Plaintiffs' standing, the Court has jurisdiction to

20  determine its own jurisdiction.  *See Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 992 (9th

21  Cir. 2004).

22  **III.     LEGAL STANDARDS**

23      **A.      Rule 12(b)(1)**

24       If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter

25  jurisdiction and the suit must be dismissed under Rule 12(b)(1).  *Cetacean Cmty. v. Bush*, 386

26  F.3d 1169, 1174 (9th Cir. 2004).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.

27  _____

28  [2] Sharma is a California resident and Volkswagen is a New Jersey corporation with a principal
place of business in Virginia.  ECF No. 47 ¶¶ 11, 26.

In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  Where, as here, the defendant makes a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in plaintiffs' favor.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

**B.      Rule 12(b)(2)**

In contesting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  But where the "motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).

**C.      Rule 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).  A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court must "accept all factual allegations in the complaint as true and construe the pleadings

United States District Court
Northern District of California

1   in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th

2   Cir. 2005).

3          Fraud claims are governed by the heightened pleading standard of Federal Rule of Civil

4   Procedure 9(b), which requires that "a party must state with particularity the circumstances

5   constituting fraud or mistake" but allows that "[m]alice, intent, knowledge, and other conditions of

6   a person's mind may be alleged generally."  Allegations of fraud must "be specific enough to give

7   defendants notice of the particular misconduct so that they can defend against the charge and not

8   just deny that they have done anything wrong.  Averments of fraud must be accompanied by the

9   who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*,

10  317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alteration, and citations omitted).

11  However, "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and

12  specific content of an omission as precisely as would a plaintiff in a false representation claim,"

13  and such a claim "will not be dismissed purely for failure to precisely state the time and place of

14  the fraudulent conduct."  *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal.

15  2007).

16  **IV.    DISCUSSION**

17         **A.    Article III Standing**

18         Article III standing requires that a "plaintiff must have (1) suffered an injury in fact,

19  (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

20  redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

21  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally

22  protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

23  hypothetical.'"  *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

24  Because "[t]he party invoking federal jurisdiction bears the burden of establishing these

25  elements," they are "an indispensable part of the plaintiff's case."  *Lujan*, 504 U.S. at 561.

26  Accordingly, "each element must be supported in the same way as any other matter on which the

27  plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the

28  successive stages of the litigation."  *Id.* at 561.  "[A] plaintiff must demonstrate standing for each

United States District Court
Northern District of California

1   claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe*

2   *Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted).

3          Both Volkswagen and Bosch argue that Plaintiffs have not satisfied the first element of the

4   standing inquiry – an injury-in-fact.  ECF No. 54 at 32-33; ECF No. 59 at 20.  Bosch contends that

5   Plaintiffs' "conclusory allegation" that they experienced the AEB defect and would not have

6   chosen the cars they did had they been made aware of the defect "fails to describe how Plaintiffs

7   allege that they were supposedly defrauded."  ECF No. 59 at 20.   Bosch also challenges the

8   second element, arguing that, even assuming Plaintiffs allege an injury, their injury is not traceable

9   to Bosch.  *Id.* at 21.

10         Plaintiffs respond that Article III standing is established by their allegation that "they

11   overpaid for their cars on account of Defendants' misrepresentations and/or omissions concerning

12   the AEB defect."  ECF No. 62 at 15 (citing FAC ¶¶ 9, 26-27).  As to the traceability of the injury

13   to Bosch, Plaintiffs highlight allegations that Bosch "actively participated with the [Volkswagen]

14   Defendants to rush AEB Systems to market" and "worked knowingly and purposefully [with

15   Volkswagen] to equip the AEB Systems in the Class Vehicles."  *Id.* at 16 (citing FAC ¶ 32).

16   Plaintiffs say they have pleaded traceability because they contend that the alleged defect made

17   their cars worth less than they paid and Bosch "knowingly concealed" the defect from consumers.

18   *Id.*

19         "At the pleading stage, general factual allegations of injury resulting from the defendant's

20   conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace

21   those specific facts that are necessary to support the claim.'"  *Lujan*, 504 U.S. at 561 (quoting

22   *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).  Here, Plaintiffs' alleged

23   overpayment injury satisfies Article III's injury-in-fact requirement at this stage because "palpable

24   economic injuries have long been recognized as sufficient to lay the basis for standing."  *Sierra*

25   *Club v. Morton,* 405 U.S. 727, 733-34 (1972); *see also Comm. v. Reno,* 98 F.3d 1121, 1130 (9th

26   Cir.1996) ("Economic injury is clearly a sufficient basis for standing.").  Bosch's contention that

27   Plaintiffs are required to plead "what they paid for their vehicles, or how (if at all) those terms

28   would have differed had they known of the supposed defect," ECF No. 59 at 21, is not supported

United States District Court
Northern District of California

in the caselaw and the authority it cites is inapposite.  *See Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017) (affirming dismissal for want of standing where plaintiffs economic loss theory was based on an alleged risks and defects that were entirely "speculative," since no plaintiff was alleged to have experienced them); *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 949 (N.D. Cal. 2018) (distinguishing cases, including *Cahen*, in which courts held that alleged overpayment injuries needed to be pled with more detail "because they were based on product defects that had not yet manifested").

The Court also rejects, for the purposes of the standing challenge, Bosch's argument that Plaintiffs' allegations of a defect are too "vague and undeveloped" to discern which components they allege that Bosch provided in order to establish traceability.  *See* ECF No. 59 at 21.  "[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of [the] claim."  *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011).  Thus, "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Id.* (quoting *Equity Lifestyle Props., Inc. v. County of San Luis Obispo,* 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)).  Here, since Bosch is alleged to have "played a role in designing the accused device that caused vehicles to perform in a way that deceived consumers . . . , and allegedly did so knowingly and purposefully as part of a conspiracy with the other Defendants," Plaintiffs' injuries are "sufficiently traceable" to Bosch at this stage of the analysis.  *See In re Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 952.

### B.      Personal Jurisdiction

#### 1.      Analysis

Defendant Bosch argues that the Court lacks both general and specific jurisdiction over it. ECF No. 59 at 32.  Plaintiffs contend that the Court can exercise specific jurisdiction under a stream of commerce theory.  ECF No. 62 at 27.[3]

The Ninth Circuit has established a three-part test for analyzing a claim of specific

---

[3] Plaintiffs appear to concede the lack of general jurisdiction.

personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  Courts apply a two-step burden-shifting analysis: "The plaintiff bears the burden on the first two prongs.  If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted).

Regarding the first prong, a "purposeful availment analysis is most often used in suits sounding in contract," while "[a] purposeful direction analysis . . . is most often used in suits sounding in tort."  *Schwarzenegger*, 374 F.3d at 802 (citations omitted).  Both tests look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (applying this principle in the purposeful availment context).  "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state.  Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state."  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112 (1987)).

Regarding the second prong, the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Walden*, 571 U.S. at 290.  "[I]t is the defendant, not the plaintiff or third

1   parties, who must create contacts with the forum State." *Id.* at 291.  Moreover, the effect of the

2   defendant's conduct must be "tethered to" the state, not to the plaintiff.  *Id.* at 290.  In the Ninth

3   Circuit, courts apply a "but for" test to determine whether Plaintiff would have been injured "but

4   for" a defendant's forum-related conduct.  *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir.

5   2001), *abrogated on other grounds*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir.

6   2017).

7         The Court assumes, for present purposes, that Plaintiffs have satisfied the first prong by

8   sufficiently alleging that Bosch directed its contacts to California under a stream of commerce

9   theory.  Nevertheless, Plaintiffs fail to satisfy the second prong because they have not shown that

10  the injuries alleged would not have occurred but-for Bosch's conduct.

11        Plaintiffs do not engage with the but-for test, and instead rest on the complaint's assertions

12  that Volkswagen developed and tested the AEB systems in Northern California, and that Bosch

13  worked closely with Volkswagen in that process.  ECF No. 62 at 28; *see also* FAC ¶¶ 17, 18.

14  Regardless of this alleged partnership, however, Plaintiffs identify no act performed by Bosch in

15  California, whether related to development or manufacturing.  Plaintiffs have also made no

16  allegations that Bosch advertised the product in or directed communications about the product to

17  California.  Absent such conduct, the Court finds that Bosch's California activities were not the

18  "but for" source of the harm that Plaintiffs suffered.

19                    **2.     Jurisdictional Discovery**

20        "A district court is vested with broad discretion to permit or deny [jurisdictional]

21  discovery." *Laub v. U.S. Dep't of Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003).  "[D]iscovery

22  should be granted when . . . the jurisdictional facts are contested or more facts are needed."  *Id.* at

23  1093; *see also Boschetto*, 539 F.3d at 1020 (jurisdictional discovery may be appropriate "where

24  pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory

25  showing of the facts is necessary").  A plaintiff must present "a 'colorable basis' for jurisdiction,

26  or 'some evidence' constituting a lesser showing than a prima facie case."  *Calix Networks, Inc. v.*

27  *Wi-Lan, Inc.,* No. 09-cv-06038-CRB (DMR), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8,

28  2010) (citing *Google, Inc. v. Egger,* No. 08-cv-03172-RMW, 2009 WL 1228485, at *1 (N.D. Cal.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Apr. 30, 2009);  *Focht v. Sol Melia S.A.,* No. 10-cv-0906-EMC, 2010 WL 3155826, at *2 (N.D.

2    Cal. Aug. 9, 2010)).  "Where a plaintiff's claim of personal jurisdiction appears to be both

3    attenuated and based on bare allegations in the face of specific denials made by defendants, the

4    Court need not permit even limited discovery."  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562

5    (9th Cir. 1995) (citations omitted).  "[L]imited discovery should not be permitted to conduct a

6    fishing expedition."  *Johnson v. Mitchell*, No. CIV S-10-1968 GEB, 2012 WL 1657643, at *7

7    (E.D. Cal. May 10, 2012) (internal quotation marks and citations omitted).

8         In response to Bosch's motion to dismiss on the basis of jurisdiction, Plaintiffs state that

9    "at a bare minimum, jurisdictional discovery is warranted to test statements made in the Stepper

10   Declaration."  ECF No. 62 at 28.  This is not a sufficient basis to initiate jurisdictional discovery.

11   The basis of Plaintiffs' complaint against Bosch is that it allegedly provided either "mid-range

12   radar sensors ('MRR') or long-range radar sensors ('LRR')" that Volkswagen and Audi

13   incorporated into their AEB systems.  ECF No. 47 ¶ 3.  The Stepper declaration flatly declares that

14   "Bosch LLC does not and has not engaged in California in any research, development,

15   manufacture, or sale of mid-range sensors ('MRR') or long-range sensors ('LRR') for AEB

16   systems for Volkswagen or Audi vehicles."  ECF No. 60-8 at 4.  As set forth above, "bare

17   allegations in the face of specific denials" are not enough.  *Terracom*, 49 F.3d at 562.  Nor does

18   the complaint include any allegations regarding Bosch's communications about the allegedly

19   defective AEB System.  Absent "some evidence" establishing a "colorable basis" for jurisdiction,

20   the Court must deny Plaintiffs' request for jurisdictional discovery.  *See Mission*, 2016 WL

21   6679556, at *5.  Any renewed request for jurisdictional discovery "must articulate the specific

22   discovery [Plaintiffs] seek[] to conduct and how such discovery will enable [them] to make a

23   prima facie showing of jurisdictional facts with respect to [Defendant Bosch]."  *Poga Mgmt.*

24   *Partners LLC v. Medfiler*, No. C 12-06087 SBA, 2013 WL 5487343, at *11 (N.D. Cal. Sept. 30,

25   2013).

26        **C.**     **UCL, CLRA, and Unjust Enrichment Claims – Adequacy of Legal Remedies**

27        Volkswagen and Bosch each raise a host of arguments as to why Plaintiffs' claims should

28   be dismissed.  Among other grounds, Volkswagen moves to dismiss under Rule 12(b)(6) based on

United States District Court
Northern District of California

1  the failure of Plaintiffs to plead the inadequacy of legal remedies.  ECF No. 54 at 19.  Volkswagen

2  points to the recent Ninth Circuit case, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir.

3  2020), and contends that it requires the dismissal of Sharma's UCL and CLRA claims as well as

4  both Plaintiffs' unjust enrichment claims.  ECF No. 54 at 23.  Bosch raises its own arguments as to

5  how Plaintiffs have failed to allege cognizable theories for relief, but also purports to "adopt[] the

6  arguments" made by Volkswagen.  ECF No. 59 at 15 n.6.

### 1.    The Ninth Circuit's Decision in *Sonner*

8      Like the present matter, *Sonner* was a diversity suit in which the plaintiff, on behalf of a

9  class, alleged claims under the UCL and CLRA.  971 F.3d at 838.  Sonner sought both equitable

10  remedies (injunctive relief and restitution under the UCL and CLRA) and legal remedies (damages

11  for failing to correct CLRA violations).  *Id.*  However, "[o]n the brink of trial after more than four

12  years of litigation," Sonner voluntarily dismissed her damages claim – a litigation decision that the

13  Ninth Circuit attributed to her desire to have "the district court judge award the class $32,000,000

14  as restitution, rather than having to persuade a jury to award this amount as damages."  *Id.* at 837-

15  38.  The district court granted defendant's motion to dismiss the late amended complaint on the

16  basis that Sonner's remaining UCL and CLRA claims were subject to California's inadequate-

17  remedy-at-law doctrine.  *Id.* at 838.  Sonner appealed, arguing that "the California legislature [had]

18  abrogated the . . . doctrine for claims seeking equitable restitution under the UCL and CLRA."  *Id.*

19  at 839.

20      The Ninth Circuit affirmed dismissal of the amended complaint, but did so on the basis of

21  "federal equitable principles."  *Id.* at 839.  Applying the Supreme Court's guidance from *Guaranty

22  Trust Co. of New York v. York*, 326 U.S. 99 (1945) for a federal court's adjudication of equity suits

23  under diversity jurisdiction, the court explained that even if state law had abrogated the equitable

24  remedies requirement, California "cannot remove that fetter from the federal courts."  *Sonner*, 971

25  F.3d at 844 (quoting *York*, 326 U.S. at 105-06) (alterations omitted).  Accordingly, the court held

26  that "the traditional principles governing equitable remedies in federal courts, including the

27  requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and

28  CLRA in a diversity action."  *Id.*

*Sonner* leaves little for debate as to whether the inadequate legal remedy doctrine applies to the claims for equitable relief now before the Court.  Nonetheless, Plaintiffs attempt to distinguish it.  ECF No. 61 at 24.  First, they point out that Sonner's "complaint [did] not allege that Sonner lacks an adequate legal remedy," and that she "conceded there was no difference between her legal and equitable remedies."  *Id.* at 25 (quoting *Sonner*, 971 F.3d at 844).  These observations are relevant to whether Plaintiffs have satisfied the inadequate legal remedy test, but not whether it applies.  Plaintiffs also suggest that *Sonner* is somehow limited by two of Judge Seeborg's cases because he was the district judge in *Sonner*.  *Id.* (citing *Bland v. Sequel Nat. Ltd.*, No. 18-cv-04767-RS, 2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) and *Marshall v. Danone US, Inc.*, 402 F. Supp. 3d 831 (N.D. Cal. Sept. 13, 2019)).  What Plaintiffs fail to mention is that Judge Seeborg decided both cases before the Ninth Circuit's opinion in *Sonner*, so they shed no light on its application.

Plaintiffs also argue that *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020), which was decided a month after *Sonner*, supports their contention that "[t]he inadequate remedy at law requirement does not apply to the UCL, CLRA and unjust enrichment claims."  ECF No. 61 at 22.  As an initial matter, the argument is difficult to credit, given that *Sonner* involved claims under the UCL and CLRA.  971 F.3d at 838.  In any event, in a footnote in *Moore*, the court rejected defendants' argument that plaintiffs could not seek equitable relief under the UCL due to the availability of a legal remedy under the CLRA, finding that the argument was "foreclosed by statute."  *Moore*, 966 F.3d at 1021 n.13.  The *Moore* footnote, however, did not hold that federal courts were no longer required to apply the equitable principles as prescribed by the *Sonner* Court for the exercise of diversity jurisdiction; indeed, *Sonner* is not cited anywhere in the opinion.  *See generally Moore*, 966 F.3d 1007.  Rather, *Moore* appears to reject the argument, much like the one addressed by the district court in *Sonner*, that *California law* prohibits plaintiffs from pursuing equitable remedies under the UCL or CLRA if an adequate legal remedy exists.  *See id.* ("The UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other."); *see also Integritymessageboards.com, v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *4 (N.D. Cal. Nov. 6, 2020) ("[B]y its terms, the *Moore* footnote addresses only

United States District Court
Northern District of California

the scope of remedies available under California state law.").

Likewise, Plaintiffs' contention that *F.T.C. v. Consumer Defense, LLC*, 926 F.3d 1208 (9th Cir. 2019), created a "rule that legislatures may eliminate traditional common law prerequisites for equitable relief in statutes," ECF No. 61 at 23, overstates *Consumer Defense*'s holding.  There the court held that a *federal* statute could authorize injunctive relief in statutory enforcement cases without a showing of irreparable harm.  *Consumer Defense*, 926 F.3d at 1214.  Such a holding is not applicable to the facts before the Court.  Nor are the holdings of *Moyle v. Liberty Mutual Retirement Benefit Plan*, 823 F.3d 948 (9th Cir. 2016) or *Astiana v. Hain Celestial Group*, 783 F.3d 753 (9th Cir. 2015), which Plaintiffs offer for the contention that a plaintiff may plead alternative claims seeking both equitable and legal remedies.  ECF No. 61 at 24.  The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy.  On that point, *Sonner* holds that it does not.  *Sonner*, 971 F.3d at 844.

### 2.      Inadequate Remedy at Law

In light of the foregoing, Sharma and Moonesar "must establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm" under their UCL, CLRA, and unjust enrichment claims.  *See id.*  Plaintiffs have not made that showing.

Notwithstanding Plaintiffs' disagreement with *Sonner*, the FAC includes several paragraphs which address the inadequacy of legal remedies.  FAC ¶¶ 99-100.  First, the FAC explains that Plaintiff Sharma cannot bring a claim for breach of express warranty based on the terms of the written warranties for his vehicles.  *Id.* ¶ 99.  Second, the FAC states that neither Plaintiff has an adequate legal remedy because damages are "not equally certain" and "are not necessarily the same amount."  *Id.* ¶ 100.  Third, the FAC argues that Plaintiffs "lack an adequate remedy at law to prevent future harm."  *Id.*

Plaintiffs' argument that damages are not an adequate remedy for their harms is not persuasive.  The alleged injury is that "[a]s a result of their reliance on partial representations and/or omissions by Defendants, Plaintiffs and other Class members have suffered a *loss of money and/or loss in value* of their Class Vehicles."  *Id.* ¶ 9 (emphasis added).  Post-*Sonner* courts have

14

United States District Court
Northern District of California

United States District Court
Northern District of California

1  indicated that this is exactly the type of injury for which legal remedies are appropriate.  *See In re*

2  *MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13,

3  2020) ("Because Plaintiffs' claims rest on their alleged overpayments and Apple's failure to issue

4  refunds, the Court finds that monetary damages would provide an adequate remedy for the alleged

5  injury."); *see also Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC(GJSx),

6  2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) ("[T]here is nothing in the [complaint] to

7  suggest that monetary damages would not make Plaintiff or the putative class whole.  Indeed,

8  throughout the [complaint] Plaintiff repeatedly alleges that he and the putative class 'lost money or

9  property' as a result of Jaguar's wrongful conduct.").

10          The FAC cites three cases to establish that that legal remedies must be "'equally prompt

11  and certain and in other ways efficient' as equitable relief" in order to find an adequate remedy at

12  law.  ECF No. 47 at 53 (quoting *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937)).  But

13  while these cases explain how timing can make a potential legal remedy inadequate, they do not

14  establish that delay inevitably suffices to do so.  For example, in *Stewart* the plaintiff insurer was

15  entitled to bring an equitable claim where it faced a contractual deadline to contest the validity of

16  an insurance policy, such that the denial of equitable relief might deprive the insurer of the defense

17  altogether and make any remedy at law inadequate.  *Stewart*, 300 U.S. at 213.  Likewise, in *United*

18  *States v. Bluitt*, the court held that the potential legal remedy – the criminal defendant's right to

19  prove innocent ownership of his 1987 Buick Royal Turbo Coupe through a foreclosure action –

20  was inadequate where the defendant needed to use car as collateral to pay his attorney, and to deny

21  him instant equitable relief would deprive the defendant of his counsel of choice making such a

22  legal remedy inadequate.  815 F. Supp. 1314, 1316-1318 (N.D. Cal. 1992).  Finally, *Quist v.*

23  *Empire Water Company*, the court determined that the proposed sale of water rights necessary for

24  plaintiffs' irrigation requirements would create an irreparable injury, and that damages could not

25  "reach the whole mischief . . . at the present time and not in the future."  204 Cal. 646, 652 (1928).

26  Here, Plaintiffs have not made any argument that the process of seeking damages would create

27  analogous complications that make that remedy inadequate.

28          Plaintiffs' argument that damages are an inadequate remedy for potential future harms fails

as well.  Post-*Sonner* courts have found that a plaintiff may still seek injunctive relief under the UCL where damages would not protect against a future harm.  *See Integritymessageboards.com*, 2020 WL 6544411, at *7 (denying motion to dismiss claims for injunctive relief after inferring that "plaintiff has no factual basis to quantify its actual damages for future harm").  Here, however, Plaintiffs have made no showing that they are entitled to injunctive relief as they have alleged no continuing or imminent injury.  *Cf.* ECF No. 47 at 54 (stating that "Plaintiffs also lack an adequate remedy at law to prevent future harm," without articulating the harm).  Plaintiffs pray for injunctive relief of "a comprehensive program to repair the AEB Defect, and/or buyback all Class Vehicles," but make no explanation as to why monetary damages would not provide nearly identical relief.  *See MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 ("Courts generally hold that monetary damages are an adequate remedy for claims based on an alleged product defect, and reject the argument that injunctive relief requiring repair or replacement is appropriate.").  Moreover, to demonstrate the threat of future harm from Defendants' disclosures regarding the AEB systems in Volkswagen and Audi automobiles, Plaintiffs must plausibly allege either that they "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to" or that they "might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (citation omitted).  These allegations are missing from the FAC.

Because they have not shown that legal remedies are unavailable or inadequate as to either past or future injury, Plaintiffs' CLRA, UCL, and unjust enrichment claims must be dismissed.

### 3.    Leave to Amend

Plaintiffs' unjust enrichment claims, which seek disgorgement, and Sharma's UCL claim are claims in equity.  "Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages."  *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012) (citing *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1146-49 (2003)).  Because Plaintiffs cannot seek legal remedies under the UCL or with a claim for

1  unjust enrichment, these claims are dismissed and leave to amend is granted only to seek

2  injunctive relief and only insofar as the amended complaint is supported by well-plead allegations

3  of future harm.  "By contrast, both damages and equitable relief are available under the CLRA."

4  *Gibson*, 2020 WL 5492990, at *4 (citing Cal. Civ. Code § 1780(a)).  Thus, Sharma's CLRA claim

5  is dismissed with leave to amend to pursue legal remedies, subject to the additional considerations

6  that follow.

7         **D.**     **CLRA Claim – Remaining Arguments**

8        Beyond the remedial issue, Volkswagen also moves to dismiss Sharma's CLRA claim

9  because it is untimely, ECF No. 54 at 18; because he has failed to plead facts establishing reliance,

10  *id.* at 23; because he has not established Volkswagen's knowledge of a defect at the time of sale,

11  *id.* at 24; and because he has not shown that Volkswagen concealed a defect or violated any duty

12  to disclose, *id.* at 28.  Although the Court has already determined that the claim must be dismissed,

13  it addresses these remaining arguments briefly.

14         **1.**     **Statute of Limitations**

15        Volkswagen argues, and Sharma does not dispute, that a CLRA claim carries a three-year

16  statute of limitations.  *See* Cal. Civ. Code § 1783.  Sharma argues that although he leased the car

17  in 2017, the action did not necessarily accrue at that time "because in California a cause of action

18  does not accrue 'until the plaintiff discovers, or has reason to discover, the cause of action.'"  ECF

19  No. 61 at 28 (quoting *Harper v. Lagbauer*, 2014 WL 1266305, at *8 (N.D. Cal. Mar. 21, 2014)).

20        Sharma is entitled to allege delayed discovery of the alleged defect and rely on tolling of

21  the cause of action.  *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005) ("[U]nder

22  the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run

23  when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff

24  pleads and proves that a reasonable investigation at that time would not have revealed a factual

25  basis for that particular cause of action.  In that case, the statute of limitations for that cause of

26  action will be tolled until such time as a reasonable investigation would have revealed its factual

27  basis.").  However, "[i]n order to rely on this rule, a plaintiff whose complaint shows on its face

28  that his claim would be barred without the benefit of the discovery rule must specifically plead

facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2019 WL 79033, at *3 (N.D. Cal. Jan. 2, 2019) (internal quotations, alterations, and citation omitted).

Sharma contends that he is not required to identify a date of discovery, ECF No. 61 at 28, but the law – including the cases he cites – is to the contrary. *See U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) ("[D]ismissal based on an affirmative defense is permitted when the complaint establishes the defense."); *see also F.D.I.C. v. Varrasso*, No. CIV. 2:11-2628 WBS, 2012 WL 219046, at *7 (E.D. Cal. Jan. 23, 2012) ("Plaintiffs are required to 'plead around' the statute of limitations in their complaint where the statute of limitations has expired and the plaintiff is claiming an exception to the statute of limitations such as tolling or delayed discovery."). Sharma's failure to plead delayed discovery provides an independent basis for dismissal of this claim.

### 2.    Reliance

In their arguments, both Sharma and Volkswagen treat Sharma's CLRA claim as based entirely on a theory of omission – that Volkswagen "knowingly and intentionally concealed material facts and breached [its] duty not to do so."[4]  FAC ¶ 150.  They also argue Sharma must allege reliance – that "[Volkswagen's] nondisclosure was an immediate cause of [Sharma's] injury-producing conduct."  *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("An essential element for a fraudulent omission claim is actual reliance.").  Sharma contends that he has made the necessary showing that he relied on the Monroney labels on his cars before leasing them.  ECF No. 61 at 19; FAC ¶ 26.

"The standard for pleading reliance on account of an omission is low, and '[t]here are, of course, various ways in which a plaintiff can demonstrate that she would have been aware of a

---

[4] Should Plaintiffs elect to amend their complaint, their fraud claims would benefit from greater clarity and precision.  Plaintiffs' argument includes contradictory assertions about whether their claims are based on a theory of omission or of misrepresentation.  *Compare* ECF No. 62 at 9 ("Plaintiffs' claims are largely premised on a fraudulent omission theory, not fraudulent misrepresentation."), *with id.* at 15 ("Plaintiffs' injury is based on their allegation that they overpaid for their cars on account of Defendants' misrepresentations and/or omissions concerning the AEB defect."); ECF No. 61 at 21 (arguing that Volkswagen "downplayed the problem [with the AEB system] by falsely implying it would only occur in 'complex driving situations'").

defect, had disclosure been made.'" *Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019) (quoting *Daniel*, 806 F.3d at 1226). Sharma's allegation, that he "viewed and relied on the Monroney Labels on his cars before leasing his cars," and that "[h]ad Defendants disclosed the AEB Defect, Mr. Sharma would not have leased the cars or would not have done so on the same terms," FAC ¶ 26, is sufficient to show that he "would have been aware of the disclosure if it had been made." *See Madani*, 2019 WL 3753433, at *11.

Volkswagen contends that such reliance was not reasonable because Sharma should know that the car came with an owner's manual, ECF No. 54 at 24, and because the Monroney sticker is not the "proper receptacle" for AEB system information, ECF No. 63 at 17. Facing a similar argument, another court in this district held as follows:

> Although defendants argue that the class vehicles' rate of oil consumption was disclosed in the owners' manuals for the vehicles, plaintiffs argue that they did not receive the manuals until after they had purchased the vehicles. The complaint does not allege that plaintiffs received owners' manuals from defendants or otherwise had access to them prior to purchasing their vehicles. . . . The owners manuals do not, therefore, disprove plaintiffs' allegations that defendants omitted and/or concealed information about the oil consumption defect prior to plaintiffs' purchases of their vehicles.

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1327 n.74 (C.D. Cal. 2013) (internal citations omitted).[5] Similarly here, there is no information in the complaint that Plaintiffs were given owner's manuals, *cf.* FAC ¶¶ 26-27, and Defendants merely suggest in their motion that owner's manuals were available for inspection at the dealership, not that information the manuals was provided prior to purchase. The Court finds that Plaintiffs have sufficiently alleged reliance.

### 3. Knowledge

Sharma's CLRA claim also requires him to allege that Volkswagen had knowledge of the

---

[5] The *Asghari* court also noted that the defendants did not "contend that the owner's manuals state that the class vehicles have a high rate of oil consumption due to an engine defect," 42 F. Supp. 3d at 1327 n.74, but this was a separate and independent reason for rejecting the defendants' argument.

United States District Court
Northern District of California

1  alleged defect at the time of the lease.  *See, e.g., Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136,

2  1145-46 (9th Cir. 2012) ("Plaintiffs must allege HP's knowledge of a defect to succeed on their

3  claims of deceptive practices and fraud [including CLRA claims].").  Here, Sharma points to

4  (1) admissions in Class Vehicle owner's manuals, published prior to his leases, that the AEB

5  systems were prone to false activation; (2) consumer complaints made to the NHTSA and on

6  various online forums; (3) testing data, warranty claims, and complaints lodged with dealerships;

7  and (4) a 2018 "Technical Tip" released by Volkswagen.

8        The complaint alleges that the owner's manuals for various Audi and other Volkswagen

9  vehicles, as early as 2015, included acknowledgement that the pre sense system "can deploy

10  incorrectly due to system-specific limits" or "can perform unwanted braking maneuvers."  FAC

11  ¶¶ 59-61.  Volkswagen argues that these are disclosures of "the functionality of the AEB System

12  [and] do not establish the existence of knowledge of any 'defect.'"  ECF No. 54 at 25.[6]  Sharma

13  contends that this is exactly the point: "the fact that [Volkswagen] admitted in the owner's manual

14  that the AEB systems were prone to false activations, while never actually disclosing that the AEB

15  systems were defective, is strong evidence of [Volkswagen's] knowledge."  ECF No. 61 at 15

16  (citing *In re General Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 879-80 (N.D. Cal.

17  2019)).  Accepting Volkswagen's argument would require the Court to accept Volkswagen's

18  characterization that the alleged problems with the AEB system "deploy[ing] incorrectly"

19  constituted something other than a defect, but the Court need not reach that question.  Plaintiffs'

20  allegations clearly alleged that Volkswagen was aware of concerns related to the AEB systems and

21  are sufficient to meet Plaintiffs' burden of pleading knowledge.

22        **4.**      **Concealment and Duty of Disclosure**

23        "[C]oncealment can constitute actionable fraud in four circumstances: (1) when the

24  defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive

25  knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a

26

27  _____

28  [6] There is, to put it mildly, some tension between Volkswagen's argument that its owner's manuals adequately disclose potential AEB issues sufficiently to place *Plaintiffs* on notice and defeat reliance, *see supra*, but not sufficiently to place *Volkswagen* on notice.

1   material fact from the plaintiff; and (4) when the defendant makes partial representations but also

2   suppresses some material fact." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D.

3   Cal. 2007) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).  Volkswagen argues

4   that Sharma fails to state a claim for the breach of a duty to disclose because he alleges that the

5   Class Vehicle owner's manuals "disclose the very matters that Plaintiffs claim to have been

6   concealed."  ECF No. 54 at 28.[7]  In Volkswagen's view, this defeats Sharma's claim because he

7   cannot show that Volkswagen had exclusive knowledge of the alleged defect, or that Volkswagen

8   actively concealed the alleged defect.  *Id.* at 29.  Sharma responds that it is not alleged that he was

9   provided with disclosures via the owner's manual prior to purchase and, even if he had, the

10  disclosures were contradictory, vague and insufficient as a matter of law.  ECF No. 61 at 11.

11      Sharma relies on *Mosqueda v. American Honda Motor Company*, in which the court

12  rejected Honda's argument that an owner's manual statement that the braking system "may

13  activate" constituted disclosure.  443 F. Supp. 3d 1115, 1133 (C.D. Cal. 2020).  The court stated

14  that the owner's manual "d[id] not give sufficient notice as to what constitutes an 'activation,'"

15  and there was no allegation that plaintiffs had access to owner's manuals prior to purchase.  *Id.*;

16  *see also Fain v. Am. Honda Motor Co., Inc.*, No. CV 19-2945-MWF (PJWx), 2019 WL 8690214,

17  at *9 (C.D. Cal. Dec. 19, 2019) (same).  The Court agrees with these authorities and finds that the

18  contents of the owner's manual does not defeat Sharma's claim at this stage.  Although the Court

19  is not convinced that the owner's manual disclosures at issue here are themselves are insufficient,

20  *see* ECF No. 63 at 14, the Court finds that there is at least a factual dispute as to whether Sharma

21  had access to the owner's manual and included disclosures at the time he leased the vehicles.[8]

22      The Court also rejects Volkswagen's challenges to the sufficiency of Sharma's partial

23  representation theory, in which it argues that the Monroney stickers "do not contain any

---

[7] *See* note 6, *supra*.

[8] In reply, Volkswagen also argues that that the knowledge of AEB system functionalities and
limitations known by NHTSA and other government agencies also defeats any claim that
Volkswagen had "exclusive knowledge" or "superior knowledge of a defect."  ECF No. 53 at 15-
16.  Because it was raised in reply, the Court does not reach this argument.  *Ass'n of Irritated
Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal 2006) ("It is
inappropriate to consider arguments raised for the first time in a reply brief.").

United States District Court
Northern District of California

statements or representations regarding the Audi pre sense performance or limitations." ECF No. 54 at 30. Sharma alleges that Volkswagen "ma[de] partial representations about the AEB Systems on Monroney window stickers, . . . which uniformly tout AEB Systems as a 'safety/convenience' feature without disclosing the AEB Defect." FAC ¶ 93. The complaint goes on to allege that "[f]or example, the Audi Monroney sticker described Audi pre sense basic as 'preventative occupant protection' and Audi pre sense city is described as 'low speed collision assist.'" *Id.* As discussed above, Sharma alleges that he viewed and relied on the Monroney representations. *Id.* at 26; *see also Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015). These allegations, which are taken as true for the purposes of this motion, sufficiently present an allegation of a partial misrepresentation.

### E.     NJCFA Claim

Volkswagen moves to dismiss Moonesar's remaining NJCFA cause of action as failing to state a claim because the allegations fail to show "the requisite 'ascertainable loss.'" ECF No. 54 at 30 (quoting *Stevenson v. Mazda Motor of Am., Inc.* No. 14-5250 FLW DEA, 2015 WL 3487756, at *4 (D.N.J. June 2, 2015)).

"To state a valid NJCFA claim, a plaintiff must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendant's unlawful conduct and plaintiff's ascertainable loss." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1200 (N.D. Cal. 2017) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007)). An "ascertainable loss" must be "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Plaintiffs may satisfy this requirement with "an out-of-pocket theory or a benefit of the bargain theory." *Pierre-Charles v. Consumer Portfolio Servs., Inc.*, Civ. Action No. 17-10025-BRM-DEA, 2018 WL 3425737, at *4 (D.N.J. July 16, 2018). "The out-of-pocket rule 'applies when a plaintiff can demonstrate that he paid money, and is now, out-of-pocket,' and the benefit-of-the-bargain rule applies when a plaintiff 'seeks to recoup what it will cost him to replace what he reasonabl[y] believed he was purchasing.'" *Munning*, 238 F. Supp. 3d at 1200 (quoting *Dicuio v. Brother Int'l Corp.*, Civ. Action No. 11-1447 (FLW), 2012 WL 3278917 at *7, (D.N.J. Aug. 9,

United States District Court
Northern District of California

2012)).

Moonesar argues that the complaint demonstrates an ascertainable loss based on the allegations that he "suffered a loss of money and/or loss in value of [his] Class Vehicle[]," and that "[h]ad Defendants disclosed the AEB Defect, Plaintiff Moonesar would not have bought the car, or would not have done so on the same terms."  ECF No. 61 at 30 (quoting FAC ¶¶ 9, 27).  Volkswagen responds that this "benefit of the bargain" theory requires Moonesar to "plead facts showing the amount that he paid for his vehicle, and quantify[] the amount that he claims he should have paid for his vehicle had it not contained the alleged defect."  ECF No. 63 at 18.

To determine ascertainable loss at the pleading stage, the Court must understand "how [the] loss [is] 'quantifiable or measurable, rather than merely theoretical.'"  *Munning v. Gap, Inc.*, No. 16-cv-03804-TEH, 2016 WL 6393550 (N.D. Cal. Oct. 28, 2106); *see also Strzakowlski v. Gen. Motors Corp.*, No. Civ. A. 04-4740, 2005 WL 2001912, at *7 (D.N.J. Aug. 16, 2005) ("Plaintiff could prove facts whereby she was entitled to relief under this theory.  For example, she could provide the sort of proofs envisioned by the *Thiedemann* court, including expert evidence directed to her defective vehicle's loss in value or some other similarly quantifiable lost benefit-of-the-bargain.").  While "no special specificity with regard to pleading ascertainable loss is required," *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 503 (D.N.J. 2009), here, neither the FAC nor Plaintiffs' opposition to the motion to dismiss explain how Moonesar would prove or quantify the amount he claims that is owed.  *Cf. Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 102-03 (D.N.J. 2011) (holding that the "methodology [was] sound and complie[d] with the Consumer Fraud Act's requirement for ascertainable loss" where the complaint assigned a value to the "thing promised" and the "product actually received"); *see also Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335-36 (D.N.J. 2014) ("The FAC alleges facts that would allow the Court to quantify a difference in value and even suggests a means to calculate loss: the price premium paid, plus increased energy costs over the lifetime of the appliance.").  Moonesar's remaining authorities are distinguishable for the factual details alleged to support an inference of ascertainable loss.  *See, e.g., Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 446 (D.N.J. 2012) ("Mickens has alleged an ascertainable loss by including (1) the cost of replacing the hood, which

continued to suffer from galvanic corrosion before and after he had it cosmetically fixed under warranty by the dealership and (2) the amount he paid to rent a car while his car was at the dealership for repairs.").  For this reason, Moonesar has failed to state a NJCFA claim, and this cause of action is dismissed.

**CONCLUSION**

The motions to dismiss are granted with leave to amend.  An amended complaint is due by April 8, 2021.  Leave is granted solely to cure any deficiencies identified in this order.  Failure to file a timely amended complaint will result in dismissal of the complaint with prejudice.

**IT IS SO ORDERED.**

Dated:  March 9, 2021



JON S. TIGAR
United States District Judge